IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Larry James Tyler. #27980,   ) | CIVIL ACTION NO. 9:16-2711-MGL-BM |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Wadell Coe and Diann Wilks,   ) | |
| ) | |
| Defendants.   ) | |
| _____) | |

This is a civil action filed by the Plaintiff, Larry James Tyler, pro se. Plaintiff, who at the time this case was filed was detained at the Darlington County Detention Center while awaiting civil commitment proceedings pursuant to the South Carolina Sexually Violent Predator (SVP) Act, S.C. Code Ann. §§ 44-48-10 through 44-48-170, seeks relief under 42 U.S.C. § 1983.[1] Plaintiff is a frequent filer of litigation in this Court, having filed at least sixteen (16) prior cases in which he has asserted a variety of claims. Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own



_____

[1] 42 U.S.C. § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

records].

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on December 22, 2016. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on January 3, 2017, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond to the Defendants' motion, his case could be dismissed. However, notwithstanding having been granted an extension on January 25, 2017 to file his response to the motion for summary judgment to February 17, 2017, Plaintiff failed to file a timely response to the Defendants' motion. Plaintiff did, however, eventually file a response on March 6, 2017, some two and a half months after the filing of the motion for summary judgment.

The Defendants' motion is now before the Court for disposition.[2]

**Background and Evidence**

Plaintiff alleges in his complaint that he is a vegetarian, and that starting around November 2, 2015 "the meals I have been getting from the Darlington Detention Center has been short in the area of a balanced meal, or lacking the required portion, or not serving me the same as the other prisoners". Plaintiff's specific complaint is that he gets "one kind of protein, peanut butter at all three meals, [while] the other prisoners [are given] a different kind of protein at every meal. They get 3 and 4 different kinds, and I get one or two of the same kind at all meals". Plaintiff further alleges that he is a vegetarian who can eat dairy products, not a "vegan" who does not eat dairy

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

- 2 -



products, and that he does not need to be restricted from foods that have dairy products in them. Even so, Plaintiff complains that he gets "no breads, eggs, butter, cakes, cobblers, or cheeses". Plaintiff alleges that he made this complaint to the Defendant Coe, "Warden" at the Detention Center, and that Coe "cut my desserts in half as a punishment because he said I was stock piling when he found three whole apples in my cell I had from my previous meals". As a result, Plaintiff alleges he only gets "½ fruit for dessert", whereas the other inmates "get all kinds of desserts". Plaintiff alleges that at the time Coe ordered the kitchen staff to cut his fruit serving in half, "medical" had him on an appetite suppression medication (Topamax), which Plaintiff apparently contends he only found out about a couple of weeks later.[3] Plaintiff alleges he told Coe that he was not eating his fruit due to the medication, but that Coe "gave me no reply" and kept him on the half dessert restriction.

      Plaintiff further alleges that he notified "medical" that he was getting diarrhea from eating peanut butter three times a day, and also notified Coe that he was having this problem, but that "nothing changed" and he got "no reply". Plaintiff alleges that he has written a "plethora" of grievances to the kitchen supervisor and Coe about the "countless shortages of either the vegetables, or the protein, and serving me the same protein at every meal", and also that he has made two requests to be taken off the peanut butter vegetarian diet, but that Coe is "forcing me to remain on it against my will" even though Plaintiff wants to be put on the "regular diet meals". Plaintiff complains that he has lost between five and twelve pounds.

      Plaintiff seeks monetary damages from Coe for the treatment he has received, that

---

[3]Plaintiff does not explain in his Complaint why he would not have known that he was on a medication that he himself was taking.



Coe be required to admit his wrongdoing, and that he be taken off the vegetarian diet. Plaintiff also seeks compensation from the Defendant Wilks (Medical Department Supervisor) for "not doing anything to prevent me from getting diarrhea". Plaintiff has attached to his Complaint copies of some handwritten notes that he purportedly sent to Coe and the kitchen supervisor, as well as copies of some grievances he filed. See generally, Plaintiff's Verified Complaint, with attached exhibits.

In support of summary judgment the Defendant Wadell Coe has submitted an affidavit wherein he attests that at all times relevant hereto he was the Director of the Darlington County Detention Center. Coe attests that medical services for inmates at the Detention Center are provided by HMES, an independent contractor, and that while he is often made aware of an inmate's medical complaints and/or treatment by HMES, he never undertakes the duty to treat inmates himself since he is not a medical doctor. Even so, Coe attests that he is aware that Plaintiff was never denied any required medical attention by anyone, including himself. To the contrary, Plaintiff has been provided medical care by HMES on multiple occasions upon his request, and Coe attests that he relies upon the medical personnel at the jail to provide and make decisions concerning Plaintiff's medical care.

Coe further attests that during the course of Plaintiff's incarceration, and consistent with the allegation in his Complaint that he is a "vegetarian", Plaintiff was provided a vegetarian diet "at his request". Coe attests that Plaintiff was provided a healthy medical diet that was consistent with appropriate medical/prison standards, that his meals were varied and his diet was not nutritionally deficient, that Plaintiff was never malnourished in any way, nor were his meals ever dangerous to him. Coe attests that all jail menus are evaluated and certified as nutritionally sound by a registered dietician, and that all menus provide adequate nutritional value based on the



recommended dietary allowances. Coe attests that he is not aware of any statutory provision, case law, or common law which would clearly establish a violation of Plaintiff's rights under the facts and circumstances of this case, nor is he aware of any court decision which has concluded under facts similar to this case that the complained of acts, conduct, and/or omissions were/are unconstitutional. See generally Coe Affidavit.

The Defendant Diane Wilkes (correct spelling) has also submitted an affidavit wherein she attests that she is employed by Hartsville Medical Enrichment Services, LLC (HMES), a South Carolina limited liability company which serves as an independent contractor providing medical services for inmates at the Darlington County Detention Center. Wilkes has attached to her affidavit a copy of Plaintiff's medical/inmate records, totaling one hundred sixty-one (161) pages of records and documents. Wilkes attests that these records reflect that Plaintiff has sought and obtained extensive medical treatment from HMES during the period of his incarceration, and that he has never been denied required medical attention by anyone, including herself. Wilkes also attests that during the course of Plaintiff's incarceration, and consistent with his allegation that he is a "vegetarian", Plaintiff was provided a vegetarian diet at his request. Wilkes attests that she has no reason to believe that Plaintiff was not provided with a healthy diet consistent with appropriate medical/prison standards, that Plaintiff was never malnourished in any way, that no medically significant weight gains/losses were ever present, nor did Plaintiff ever suffer from any serious medical conditions related to his diet.

A review of the medical/inmate records attached to Wilkes' Affidavit confirms that during his medical intake review upon entering the Detention Center in October 2015 Plaintiff requested a "special diet". See Exhibit (Court Docket No. 19-4, p. 3). When asked if he had any



- 5 -

special dietary needs, Plaintiff answered "yes", and that he was a "vegetarian". See Exhibit (Court Docket No. 19-4, p. 8). Plaintiff's main medical complaint since entering the Detention Center appears to have been migraines, and the medical evidence reflects that he has been treated and received medications for this condition throughout his period of incarceration. He has also been treated for athletes foot. In July 2016, Plaintiff threatened to file a lawsuit because medical staff was purportedly not giving him medication for kidney stones, bleeding in his urine, and severe back pain, although he references no medical findings for this claim. See Exhibit (Court Docket No. 19-4, p. 29). Indeed, Plaintiff apparently sent in a second grievance shortly thereafter that read "scratch that last message. It was not for you. Sorry". See Exhibit (Court Docket No. 19-4, p. 30). These exhibits also reflect that Plaintiff has complained about his teeth and dental care, including a demand that he have a tooth extracted "immediately", and about receiving an antifungal creme that he contended was not working properly to "rid my hand of this flesh eating fungus". See Exhibit (Court Docket No. 19-4, pp. 52-53).[4]

With respect to the claims at issue in this lawsuit, these records include a nurses note dated February 18, 2016, wherein it was noted that medical had been called after an officer had confiscated uneaten fruit from Plaintiff's cell. The nurses note indicates that the kitchen staff wanted to start portioning Plaintiff's fruit in the future to prevent him from hoarding food after eleven apples were taken out of his cell. See Exhibit (Court Docket No. 19-4, p. 86). In a grievance filed June 15,

---

[4] These records also show that Plaintiff is not without a sense of humor. In a grievance to medical filed April 14, 2016, Plaintiff wrote: "I'd like data on Zyrtec please. I realize it will be years before I get it, but I am requesting anyway. Nothing yet on the Zantec as well. I requested that before the dinosaurs became extinct. I have been craving pickles at 2:00 a.m. Don't tell me one of these pills has made me pregnant". See Exhibit (Court Docket No. 19-4, p. 58).

2016, Plaintiff complains about being provided "peanut butter every day" and that he is not "receiving my protein that I should get daily". See Exhibit (Court Docket No. 19-4, p. 44). Earlier, on June 5, 2016, he had complained to medical that he was experiencing diarrhea due to "eating six or more oz. of peanut butter a day for my protein. See Exhibit (Court Docket No. 19-4, p. 45). However, in a previous complaint to medical about his diet on May 24, 2016, the medical office had responded that "vegetarian diets are handled through Admin. not medical, please contact Admin. Medical only handle[s] diets due to allergies". See Exhibit (Court Docket No. 19-4, p. 47).

These records also show that Plaintiff's food complaint often centered around him wanting more food, or increased calories. For example, on April 2, 2016, Plaintiff wrote: "Did the Dr. have my meal intake increased? If so, how much more? They don't seem to increase it at every meal. At lunch today I was given one-half ear of corn, a cup and a half of white rice, and a cup and a half of collards. That's it. Oh and not even a half of an orange" See Exhibit (Court Docket No. 19-4, p. 64). Plaintiff's complaint about the difference between being a vegetarian and a vegan is evident in a grievance submitted to medical on March 17, 2016, wherein he wrote: "I would like to talk to the doctor about my loss of weight tomorrow. I have been trying to get the kitchen to give me breads and butters in my diets, but he says vegetarians don't eat this. I tell him I am not a vegan. He does not understand the difference". See Exhibit (Court Docket No. 19-4, p. 68).[5] Even so, on March 21, 2016, Plaintiff blames a purported loss of weight not on his diet, but on his being on

---

[5] In an earlier request, dated March 5, 2016 (sent to a "Mr. Ross"), Plaintiff asked to be taken off of the vegetarian diet and put on the regular meal diet. See Exhibit (Court Docket No. 19-4, p. 75). It is not clear what the response to this request was, although Plaintiff has submitted some exhibits showing that he did receive food servings that included bread, cheese, cake, mashed potatoes, and other such food stuffs. See Plaintiff's Exhibit (attached to response to summary judgment).



Topamax, which had resulted in his having "no appetite". See Exhibit (Court Docket No. 19-4, p. 72). See generally Wilkes Affidavit., with attached Medical/Inmate Records.

In opposition to the Defendants' motion for summary judgment, Plaintiff has submitted a "Declaration" in which he proceeds to talk about various issues (primarily his complaints of migraines and about his teeth) which are not at issue in this lawsuit. With respect to the claims at issue here, he states only that the "Defendants' vegetarian meals have deprived the Plaintiff of vital nutritional needs over a years time". See generally Plaintiff's "Declaration". Plaintiff has also attached copies of various inmate/medical records to his response (most of which are also attached to Wilkes' Affidavit as exhibits). Again, a substantial amount of this material deals with Plaintiff's complaints about migraines and about his teeth, which are not at issue in this lawsuit. However, Plaintiff does provide some handwritten exhibits wherein he complains about his diet, but which he then goes on to state included (depending on the meal) servings of iceburg lettuce, cucumbers, white rice, field peas, peanut butter and jelly sandwiches, corn, grits, Cheerios, tomatoes, fruit, pickles, apples, bread, mashed potatoes, pears, white potatoes without skin, broccoli, cake, slices of cheese, collards, oranges, green peas, cookies, string beans, oatmeal, pineapple, and even potato chips. See Plaintiff's Exhibits.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991).



Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

Assuming for purposes of summary judgment that Plaintiff at this point would be entitled to the status of a civilly committed inmate (as opposed to a convicted prisoner), his custody status as such would most closely resemble that of a pretrial detainee. Lingle v . Kibby, 526 Fed.Appx. 665, 667 (7th Cir. Apr. 15, 2013) [Civilly committed persons are treated as pretrial detainees]; Valbert v. South Carolina Dep't. of Mental Health, No. 12-1973, 2013 WL 4500455 at * 9 (D.S.C. Aug. 20, 2013) [same]; Treece v. McGill, No. 08-3909, 2010 WL 3781695 at * 4 (D.S.C. Sept. 21, 2010)["A civilly committed individual under the SVPA most closely resembles the custody status of a pre-trial detainee."] (quoting LaSure v. Doby, No. 06-1527, 2007 WL 1377694 at * 5 (D.S.C. May 8, 2007)); Tillman v. Dixon, No. 10-5032, 2011 WL 5119187 at * 9 (W.D.Wash. Aug. 12, 2011)[The rights of those civilly committed are analyzed using same standards that apply to pretrial detainees], adopted by, 2011 WL 5118750 (W.D.Wash. Oct. 27, 2011); Youngberg v.

- 9 -



Romeo, 457 U.S. 307, 324 (1982). Therefore, Plaintiff's diet/medical claims are evaluated under the due process clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535, n. 16 (1979); see also Seling v. Young, 531 U.S. 250, 265 (2001) ["[D]ue process requires that the conditions and duration of confinement under the [Sexually Violent Predator] Act bear some reasonable relation to the purpose for which persons are committed"]; but see also Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988) [Holding that the Fourteenth Amendment guarantees at least Eighth Amendment protections]. Cf. Larch v. Gintoli, 04-1962, 2006 WL 895019, at ** 3-4 (D.S.C. Mar. 31, 2006).

    Considered pursuant to this standard, Plaintiff's general and conclusory claims that he was provided with an improper diet or that medical personnel did not adequately treat his complaints of diarrhea , without any actual medical or any other type of evidence to support these assertions, fail to set forth a claim of a constitutional magnitude. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; see also Drakeford v. Thompson, No. 09-2239, 2010 WL 4884897, at * 3 (D.S.C. November 24, 2010), citing Larken v. Perkins, 22 Fed. Appx. 114, 115 (4th Cir. 2001)[Noting that non-movant's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation, . . . [is] insufficient to stave off summary judgment"]. Specifically, with respect to Plaintiff's complaint that his constitutionally protected rights were or are being violated because he did not receive adequate medical treatment for his complaint of diarrhea, liability may be imposed only if Plaintiff has evidence to show that "the decision by the professional [Wilkes] is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment". Youngberg, 457 U.S. at 323. Further, "[i]n determining whether the State has met its obligations . . . decisions made by the

- 10 -



appropriate professional are entitled to a presumption of correctness. Such a presumption is necessary to enable institutions of this type . . . to continue to function". Id, at 324.

Therefore, in order to avoid summary judgment on this claim, Plaintiff would need to have submitted evidence sufficient to create a genuine issue of fact as to whether Wilkes or any other medical professional failed to exercise the level of professional judgment required by Youngberg with respect to his complaints of diarrhea. See Patten v. Nichols, 274 F.3d 829, 838 (4th Cir. 2001) [Denial of medical care claim brought by an involuntarily committed patient "must be measured against the professional judgment standard articulated by the [Supreme] Court in Youngberg"]; see also Kollyns v. Chavez, No. 05-3022, 2006 WL 2459484, at * 2 (D.S.C. Aug. 23, 2006) ["To state a claim pursuant to the Fourteenth Amendment requires a plaintiff to provide proof of more than mere negligence in diagnosing and treating medical complaints"]. Plaintiff has failed to submit any such evidence. None of Plaintiff's exhibits contain any such evidence, while (conversely) the medical records and documents submitted by the Defendants reflect that Plaintiff received frequent, ongoing care for his various medical complaints. There is no evidence before this Court that any of the medical treatment or advice given to the Plaintiff represented "a substantial departure from accepted professional judgment, practice or standard". Youngberg, 457 U.S. at 323; see also Savidge v. Fincannon, 836 F.2d 898, 907-908 (5th Cir. 1988) [Civilly committed patients right is to "minimally adequate . . . medical care"]; Patton, 274 F.3d 845-846 [Granting summary judgment where the evidence was insufficient to give rise to a genuine issue of fact that the defendants "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional."]. Certainly, Plaintiff's own unsubstantiated and lay opinion that he was not provided with "minimally adequate" care or treatment for his complaints of



diarrhea, without any competent or probative supporting medical evidence, is insufficient to avoid summary judgment. Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]); Youngberg, 457 U.S. at 322-323 ["Courts must show deference to judgment exercised by a qualified professional]; cf. Malik v. Sligh, No. 11-1064, 2012 WL 3834850, at * 5 (D.S.C. September 4, 2012), aff'd. 507 Fed. Appx. 294 (4th Cir. 2013) [Finding that a self serving affidavit from the Plaintiff was "simply not enough to create a genuine dispute as to any material fact" in light of the other evidence that disputed the credibility of Plaintiff's self serving claims]; see also Drakeford, 2010 WL 4884897, at * 3 [Noting that non-movant's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation, . . . [is] insufficient to stave off summary judgment"].[6]

       With respect to Plaintiff's diet claim, he has again provided no evidence to support his conclusory claim in his Complaint that he was provided with a constitutionally inadequate or improper diet while at the Detention Center, and absent any such evidence, the Defendants are entitled to summary judgment. Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"];; A.P. ex rel. Bazerman v.

---

[6]Plaintiff has also failed to submit any evidence to show that the Defendant Coe, who is not a medical professional, should be liable for any claim relating to his complaints of diarrhea. Cf. Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment of medical personnel]; Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely on expertise of medical personnel].



Feaver, No. 04-15645, 2008 WL 3870697 at *12 (11th Cir. Aug. 21, 2008)["[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence . . . ."].  Plaintiff has himself provided as exhibits a listing of various and varried food stuffs that he has been provided to eat, and while he is obviously dissatisfied with what foods he has received, he must do more than just merely set forth his own unsupported and self-serving personal opinion that his diet was not "constitutionally" sufficient to avoid summary judgment. Mays v. Springborn, ____ F.3d ____, 2009 WL 2046484 at * 4 (7th Cir. 2009)[For diet claim, prisoner must have *evidence* to show the Defendant was deliberately indifferent to an objectively serious risk of harm and that the Defendant knew about it and could have prevented it but did not]; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999)["Deliberate indifference is a very high standard - a showing of mere negligence will not meet it."]; Bailey v. Kitchen, No. 08-141, 2009 WL 102534, at * 3 (D.S.C. Jan. 12, 2009)["Assuming a diet's nutritional adequacy, prison officials have the discretion to control its contents"]; Guess v McGill, No. 13-2260, 2014 WL 5106735 at * 8 n. 11 (D.S.C. Oct. 10, 2014) [Denying civilly committed inmate complaints regarding food] (citing Ayers v. Uphoff, 1 Fed.Appx. 851, 855 (10th Cir. 2001) [Where prisoner complained about substitute food that he was being provided on special diet, the court held that "Plaintiff [had] no constitutional right to preselect foods or demand a certain variety of foods, and that Plaintiff's dissatisfaction with menu at the prison [was] not sufficient to support an Eighth Amendment claim".]); Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]. Therefore, this claim should also be dismissed.

Finally, to the extent Plaintiff's claim is that the Defendant Coe (or anyone else)



mishandled or improperly handled his grievances concerning these complaints, that is not a claim cognizable in this Court in a § 1983 action, as there is no constitutional right of access to a prison grievance procedure.  See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) [existence of a prison grievance procedure does not confer any substantive right upon inmates]; Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Brown v. Dodson, 863 F.Supp. 284 (W.D.Va. 1994) [inmates do not have a constitutionally protected right to a grievance procedure]; Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982) [even where a state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights]; Burnside v. Moser, 138 Fed.Appx. 414, 415-416 (3d Cir. June 30, 2005).  Therefore, a defendant's failure to follow a jail grievance procedure (even if that had been shown in this case) does not give rise to a § 1983 claim.  Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.Mo. 1986) [holding that an inmate grievance procedure is not constitutionally required]; see also McGuire v. Forr, No. 94-6884, 1996 WL 131130, at *1 (E.D.Pa. March 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996) [creation of a grievance system by a state does not create any federal constitutional rights, as prisoners are not constitutionally entitled to a grievance procedure]; Moore v. Sergent, No. 01-1271, 2001 WL 1355298 (6th Cir. Oct. 26, 2001); cf.  Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) [prison officials may place reasonable limits on prisoner's access to grievance procedure].

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 9, 2017
Charleston, South Carolina

- 15 -



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

